Good morning. My name is Kirk Wolden, and I am here on behalf of Appellate Rodney Harmon. I have with me my co-counsel Jerome Chapley and Ryan Lutz. It's an honor to be here, and if the Court pleases, I'll proceed. It's wonderful that a person who's in a hotel for a night could get such a three-esteemed counsel to represent him here. That's quite remarkable. We'll look forward to your argument. Thank you, Your Honor. The first and, I think, one of the important arguments that we need to address and I want to talk about and emphasize relates to the fact that Judge Spiro, Magistrate Judge Spiro, based his decision on the characterization that it was implausible to characterize this as a charge. And we really need to go no further than the language, than Hilton's own language, in order to, I believe, show plausibly and reasonably that it is a charge. That language says, I have requested weekday delivery of USA Today. If refused, a credit of 75 cents will be applied to my account. What is important about that is that it is stated specifically. It is stated as a specific item. It is stated to be of a specified value. And critically, you are entitled to receive 75 cents back of what you paid. It says credited to your account. Your account is what you paid. That, we believe, plausibly, if not reasonably, establishes this as a charge. Can we just sort of set aside his, that part of his analysis? Certainly. I'm just saying this is possible in reviewing the magistrate judge's disposition. If we agree with you that it is a charge and has to be determined that way, does that mean that the rest of his opinion can't be salvaged? Well, I don't think so, Your Honor. And that is because I think if it's established to be a charge, then we are faced with the fact that it is not, despite they say it being something that is part of the room rate and credited, and that the ABC rules, which they say they conform their conduct to, says that it is to be included in the room rate. We believe that the failure to disclose it on the invoice, in and of itself, coupled with it being a charge, is sufficient to get the likelihood to deceive. Suppose, suppose, do we have to go so far as to say it's a charge? That is, can we just say it's really not a gift? Well, it's certainly not a gift. It is something that the individual should be entitled to receive back from what he paid. I'm just wondering how much of his opinion is based upon this distinction. It's a shame to go back again to retry a case if there's something that the wording of it is, led him down the wrong path, but the analysis ends up something we can deal with. Well, I think, you know, the backup argument that Judge Spiro made was that this statement is incapable of deception given the manner in which it was disclosed on the registration card and on the sleeve in which the room card was held. Now, we would argue that placing the disclosure in quotes on a sleeve card is inadequate, particularly in the manner in which it was presented on the sleeve. But, you know, we're dealing here with a statement where the plaintiff does not allege it's untrue, but it is a true statement. It is not alleged to be false in and of itself. But that leads to the second question that in the Davis case the Ninth Circuit recently confirmed as a law, and that is that even if it's true, then you need to go to look at its manner of presentation, to look at whether it is likely to deceive consumers. And the plausibility of whether it is likely to deceive consumers relates to the plausibility of whether or not it is presented in a manner which is likely to mislead consumers. And the fact that it's not true in the case of the Ninth Circuit, it's not true in the case of the Ninth Circuit. So the fact is that under the California law, under the guidance of MASA, the Ninth Circuit did, Your Honor. How do you do that? Well, we never got to the class certification stage, and MASA came down, I believe, sometime after, sometime after the decision in our case on a pleading motion. So the fact is, is that we pleaded that under California law without the guidance of MASA, based upon various factors, including the fact of the strength of Hilton's presence in California as indicating that the application of California law to a national class would be appropriate. I realize that if we go back, that we will be facing a different dynamic in terms of the ability to state a national class in this context. All right. Going back, you – you – there is an issue here about whether or not you asked leave to amend. Yes. And I've been looking at the record to try to find out where you did that. And the only place I can find is in the conclusory section of your brief that was filed before the oral argument, where you say if you do dismiss it, we ask for leave to amend. Was that ever raised again after that? This is on September 6th. It's a September 16th brief that you filed. Certainly. Your Honor, in terms of leave to amend, first of all, this is a de novo review where we were, you know, and I would – I believe that on a de novo rule review, if the Court finds facts sufficient to state a cause of action, it should return it on its own accord. But also, the – you know, we did request it in the reply brief, and I'm just going to the argument. I've looked at the argument. I don't think it was ever actually mentioned. The judge said he was going to take it under advisement, and that was basically the end of the argument. I believe it was – I think it was requested in the written papers, Your Honor. I don't have the specific reference to the record. I believe it was requested near the conclusion of the reply brief in front of Judge Spiro. Right. If you were granted leave to amend, how would you amend? Well, I believe – given the nature of Judge Spiro's rulings, I don't know that there really was a capacity to amend. If for some reason on a de novo review this Court felt that the factual allegations were inadequate in terms of detailing the manner of presentation or why that was likely to mislead consumers, we could certainly do that. We could certainly include in the briefing that which they requested judicial notice of, which related to the – their compliance with the ABC rules, which provide additional language suggesting that this is a charge. So I believe there would be some ways to do that, but given the forceful nature of Magistrate Spiro's conclusions, I don't know that that would have been plausible given his findings. Did you make a motion to amend which was denied? I don't believe so, Your Honor. That's not – if I am wrong, I apologize, but it's not consistent with my recollection that we made a motion to amend. And my co-counsel, who argued the motion in the lower court, is correct. So that's not an issue in this case? It is not, Your Honor. At least it wasn't raised in your opening brief. It was not. Okay. Counsel, let me – I want to step back from sort of the big picture here, because I'm sort of having trouble from the outset grasping what the problem is here. It has been industry practice for a long, long time to provide newspapers to customers at hotels. They drop it outside the door. Sometimes they ask you if you want both the L.A. Times and USA Today. That's been going on for a long time. It's clear that we're in a time of transition. We're moving to electronic media. Some people don't read the newspapers as they do hotels now. Sometimes we'll put the newspapers – we'll give you the newspaper if you ask for it. You can find it in the elevator. You can find it downstairs. Sometimes you can't find it at all. I don't find that my rates ever change, depending on whether I'm at a hotel that gives me a newspaper or doesn't give me a newspaper. So what's unfair about this? The guy knew he was paying $119 a night. And down at the bottom of his card, it says, if you don't want the newspaper, you can tell us and we'll give you a 75-cent credit. And we're in a time of transition. He gets the newspaper. It's there. If he doesn't want it, sorry. I mean, it's – why is this different from calling the hotel in advance and saying, don't bother, I'll bring my own soap, and I'd like a credit for the soap? Well, I think it's distinct, because I believe that we will be entitled, if this matter goes back in discovery and in preparation for trial, to investigate and present to the Court facts suggesting that the history of the provision of newspapers at Hilton, and generally in the industry, has been on the assumption that those newspapers have not been being charged for. And – Well, of course they've been charged for. They're wrapped in – it's – but they're charged in the same way that you're getting charged some pro rata share for the doorman, for asphalt in the parking lot, and for the gym. I disagree. And it deals with the way that Hilton and the Audit Bureau of Circulation rules classify this particular charge. Because if you look at the – if you look at those rules which Hilton said that they complied with, it said, copies distributed to guest rooms wherein the guest is notified upon check-in that a specified amount – this is at page 66 of the excerpts of record – is included in the price of the room, and that that amount will be refunded should the guest elect not to receive the newspaper. We have a specific manner of dealing with this. And that relates to factors of the industry. But it's important for this specific charge, as opposed to the asphalt in the parking lot, as opposed to the light bulb in the room, as opposed to the shower curtain in the room, or even the soap, is that Hilton itself represents that we will give you money back if you don't if you elect not to receive this. And that creates an obligation on the part of Hilton to make good on that representation. And in presenting it in the manner in which they did, we believe that they factually – we created a presumptive, plausible argument, given its manner of presentation in the font, in the manner of its presentation, that they intended and desired that it not be read. And the most powerful piece of evidence is that something that is to be identified as a specified charge is not, per their own rules, per the ABC rules, is not itemized in the invoice. And in the recent decision by Judge Koh in the Williamson case, with the tire fee, she relied heavily on the fact that it was disclosed in the invoice as providing the constructive knowledge that allowed that individual, as a reasonable consumer, to decline that charge. It's the specification, it's Hilton's manner of treating it, and it's the manner in which – in the environment in which these newspapers are offered that creates the plausible argument. And I'm happy to field additional questions. I did want to reserve a couple of minutes for rebuttal. You may do so. Thank you, Mr. Walden. Thank you. Mr. Sunshine? You didn't ask Hilton for a room, did you? Your Honors, good morning. In their briefing, the words, moral indignation, scandalous, a company that preys on its guests, a scheme to defraud, every one of those was included in their papers. All this hyperbole for giving a benefit to its guests that it's not obligated to give discloses it accurately and provides the amenity to its guests as part of a package of things that every guest at every hotel in the world gets. Could I ask Hilton to give me a credit if I didn't want the soap because I brought my own soap or that there were three towels in the room and I was staying there alone and I didn't want three towels, I just wanted one towel, would they give me a credit if I asked them for that? Your Honor, that question is better directed to plaintiffs. But I'm directing it to you. From Hilton's perspective, of course you can't get a credit for that. They don't give credits. They're giving a credit. They tell the world that they're giving a credit. So it's the adequacy of how they tell the world. And I'm looking at this fine print where Hilton tells the world. And I got to tell you something. My eyes aren't all that great, but I can hardly read that fine print. Did they really expect anybody to read that fine print and understand that they could get a 75-cent credit for an unwanted paper? Your Honor, may I comment on that, please? Please. We – that – what you're reading has been copied and sort of lost its – what it looks like in reality. I have brought with me today, and I would like to give to the Court, copies copied from the underlying district court file, which is much more legible. Can I approach the bench and give you these? You can give them to the clerk. Do you have a copy for counsel as well? There's two. And I have a third. And you'll see, Your Honor, it is legible. It is readable. Probably much more readable than the copy that you were struggling with. It's actually identical. Okay. And you also put it in the sleeve of the key card, but you don't get that until after you've registered, right? That's correct. So that's – that's really irrelevant. Well, let me address that, Your Honor. Why is that? You could ask for the refund at any time. Indeed, he could have asked for the refund when he realized that he had been charged for it or it had been – he had the ability to get a credit for it. He could have asked when he realized it several days later. There's no evidence that Hilton had a policy of not honoring that 75-cent credit at any time. In fact, the reality is that an inference can be strongly drawn, although it's not in the record. An inference can be drawn that if he had called several days later, as he alleges, when he learned of this potential to get a credit and knowing that he didn't read the USA Today, he could have called then. And the inference is that Hilton would have honored it. I mean, we're talking about a 75-cent credit. There's no – there's no evidence that – and there's no inference to be drawn that Hilton would not have done that. So where does all this hyperbole lead us? Your Honors, we agree on the facts. In fact, the motion to amend, the reason why there's – you heard his litany of things that he would do to amend. There's really nothing – there's nothing there. We agree that there's no misrepresentation. Counsel said it just a minute ago. The disclosure is completely accurate. He admits there's no evidence that it's called anything other than a credit. It's not called a charge anywhere. There's no evidence that, you know, that it's any different from towels and other amenities that all hotel guests get. He admits his signature is – that's his signature directly below the language that's relevant. He admits he received and read the similarly accurate disclosure several days later. Obviously, he was able to read it then, what he had several days later, because he alleges in the complaint that he read it and saw it, and it dawned on him and he went and got a lawyer. So there's no question that he was able to read it then. He never argues – it's very interesting. If you look at his papers carefully, he never – they never – he never argues that it's unreasonable – that it's unreadable. He says it's small font. There's a difference. Small font is one thing, but unreadable means he can't read it. He admits, essentially, that he did read it, as I said. And finally, he drops the unconscionability claim. It's nowhere in his briefing before this Court, which, you know, we obviously find interesting and we appreciate that he doesn't go down that road because there's certainly nothing unconscionable about this practice. So where does that litany of things lead us? Look at the case law here. The cases that – Let me go to the case law. Sure. Let's look at some of the – in this case, it troubles me. Suppose this issue of a charge or amenity that the magistrate judge was apparently taken with we find is not very relevant. Does that – what then happens to the magistrate opinion? I think the magistrate's opinion – there's two issues. First of all, he covers standing. He bases his ruling in part on standing. And he says, basically, there's no damages because it's disclosed that you could get the 75 cents back. As one of you just noted in the plaintiff's argument, he knew he paid $119 for his room. It never said that he paid $118.25. He paid $119 and baked into that price are all the amenities that you get. So there's never – there's never a place, there's never a calculation that you can make where you have damages. And for that reason, he – the magistrate judge, in what I think is very well thought through and reasoned opinion, said that there's no – threw the case out. So where does it leave you? It's still disclosed. You still have the disclosure issue. The reasonable consumer likely to be – you know, the very high standard reasonable consumer, it must be likely to deceive him. You have a fully disclosed, accurate statement where the guy signed right below it. And none of that is – whether you call it a charge or a credit, is irrelevant to that inquiry. But what we're dealing here with is our statutes. I'm sorry? What we're dealing here with are statutes. That is, violations of statutes. Right. In this case, does it make any difference whether you identify it as an amenity as far as the statute is concerned? You mean the unfair competition statute? Yes. No. I – well, I'm struggling how to answer that. We, of course – I'm struggling how to ask it. We were, of course – we obviously think that the difference between a credit and a charge is important. The statute – Well, the judge certainly did. The statutes have a very high standard, likely to deceive a reasonable consumer. We certainly don't believe under these facts you have likely to – it is likely to deceive a reasonable consumer. Isn't that a question of facts? No, because, Your Honor, there are no further facts besides the ones in this record. It doesn't get any more complicated than this. They've admitted essentially all the facts. We agree on the facts. I don't know what other facts would – I'm struggling. When Your Honor asked him how to amend, I was struggling with how he was – what he was going to say. And I don't really think he came up with much that really will move the dial. Put amendment aside for a second. Sure. Take an analogy that comes to my mind, and that's in a Lanham Act case or a trademark case where there might be a likelihood of confusion, for instance. Ordinarily, you allege the facts, which are usually uncontested, but a plaintiff has the opportunity to develop the likelihood of confusion by going out and doing surveys, getting expert opinions, and that sort of thing, to sort of flesh out what the plaintiff believes is a deceptive or a confusing mark or something like that. Why wouldn't you give the plaintiff here at least an opportunity to do that before holding it as a matter of law this disclosure, which Hilton obviously felt that it had to make, unlike the soap and the towels, was adequate? Why wouldn't you give him that chance? Instead of just throwing the case out on the pleadings. Because within the construct of the facts that we have here today, one of them, one of the key ones, is that when he discovered that there was this ability to get a credit, he did nothing about it except talking to a lawyer. He could have called Hilton. He could have done something about it right away. There are no further facts. Essentially, under his facts, there's no liability. We disclosed it. He signed it. He realized days later exactly what it said and what it meant. There's no deception. There's no inaccuracy. There's nothing inaccurate about it. It says you can get 75 cents back if you want, if you notify Hilton. It doesn't have a time limit. It doesn't say it has to be, you know, at the desk. But it doesn't say that in this disclosure at all. It says if refused, a credit of 75 cents will be applied to my account in the event of an – and then it goes on to the event of an emergency and it talks about something else altogether. That indicates to me – and again, this could be something that could be fleshed out in discovery – that indicates to me that when you check out, you have either agreed to this or not agreed to this. I mean, that's when we settle up our bill with a hotel. We all know that. I'm just – I'm just concerned that the plaintiff here wasn't given an opportunity to flesh out these – the reasonableness and adequacy of this notice. If ordinarily you would give a plaintiff the opportunity. Your Honor, I struggle – I continue to struggle with what precisely – what discovery he can do to Hilton. We're not going to have – we're not going to have much to give him. We developed that language. We put it in the two documents. It complies with the ABC rules, which counsel talked about, which we have to do in order to satisfy USA Today because obviously they get ad revenue based on circulation and that – and they have to comply with those rules. That's their governing body. I just – I struggle – standing here right now, I struggle to know what discovery we would get from them that would be relevant, that would move the dial. We've got all the facts before us. It's – they're undisputed, essentially. You know, the case law – you know, every case they cited, there's a true falsity. There's a true misrepresentation. For example, the Chapman and – the Skype case, you know, the words unlimited plan are right there up front, unlimited plan. And then, of course, you go to the fine print and it's not unlimited at all. The Kwikset case, made in the USA. It says made in the USA. You learn later it is not made in the USA. There are parts and development done overseas. Gerber juice, the Williams and Gerber juice. Every one of these cases, you know, in that one they have pictures of all this fruit that they don't put in the fruit juice. You know, it's a clear misrepresentation. That's the case law that they cite. And then, you know, we cite cases like the HSBC case. You know, the guy read an ad for MasterCard. He got one, didn't read any of the fine print. The fine print says that he has to pay an annual fee. He says, I didn't know there was an annual fee for MasterCard. The court looked at that and said no liability. It is no reasonable consumer could be deceived by the fact that it wasn't mentioned, you know, in the first document that he looked at. And the other cases, essentially, that's how the cases split down – split. But here, you know, it just comes – it keeps coming back to the same thing. There is – there is no – there is no misrepresentation. It's not even close to a misrepresentation. Everybody in this room realizes that there is no misrepresentation. Let me ask you a question before you run out of time. In the context, you – Hilton brought the motion for judgment on the pleadings, correct? Motion to dismiss. Motion to dismiss? Right. Based on the pleadings? Right. Was there an objection to the motion based upon the need for discovery? Not that – well, they raised – I believe they raised it in their papers, but there was no – Papers where? Before the magistrate judge? It would have to be before the magistrate judge. It might be in the briefs? It might be. I don't recall – I will say this. I don't recall any big deal being made of that fact by plaintiff. And it certainly wasn't anything Judge – you know, Magistrate Spiro, obviously, in his opinion, didn't think much of it and agreed with me that – Well, that's – we were trying to put it into context because that's how we deal with these issues. If there was no motion made for discovery when the motion for judgment on the pleadings occurred, that sort of forecloses. But if a motion was made for discovery, then we'd have to look at the ruling of the magistrate judge to see – I can safely say that there was no motion for discovery made. There's no question about that. There wasn't an objection to the motion for judgment on the pleadings based upon the need for discovery? There was no objection made? Yes. I believe there might have been a mention of it in the brief. I'm not even sure of that. Well – In the brief in opposition to the motion. Your Honor, I could check and have the answer for you in minutes. Well, we can find it out. That's – I would like to know if, in fact, that happened, what the magistrate judge did with the objection or with the motion, whichever it was. Well, I know there was a dispute – not a dispute. I know there was an issue raised about the key folio, whether that could be part of the record. And the magistrate was careful to ask counsel whether they had an objection to that. So, you know, he was taking into consideration whether that could be looked at in the motion to dismiss because it wasn't actually part of the complaint. And I know that plaintiff agreed that it could be viewed as part of the record and it could be considered and the magistrate did consider both the key folio and the check-in card. Okay. Thank you. Thank you, Your Honor. Thank you. A couple of brief points. First of all, it's important to – and I didn't emphasize this probably enough – the fact that this is a presumptive opt-in as part of the misleading nature of this transaction. The presumption in that language that appears in that five-point font is that you, the customer, have requested this. They are assuming that from your conduct in seeking the room. But a couple of points. First of all, on standing. As the Kwikset Court said, there are innumerable ways in which standing can be established. And as this Court said in the Hinojez case, that economic injury sufficient for standing is satisfied if a person surrenders more in a transaction than he otherwise would have. Now, whether classified as a charge, whether classified as a credit, whether classified as anything, the simple fact is he was disentitled to 75 cents back to him for unreasonably having that charge and that entitlement to refund disclosed to him. He has to ask for it, though, right? He has to ask for it. That was my next point, this idea that somehow the inference should be from the record before this Court that if he'd asked for it three weeks later, he would have gotten it. I don't know where that comes from. And one of the things that we will and would really appreciate the opportunity, because we know what the customer experience is in terms of asking for money back, is whether or not, even if you ask for it back during your stay, whether there is a Hilton mechanism, a Hilton button you push on the cash register to even facilitate that request for the money back. That's not before Your Honors either, but that is certainly an area of discovery that we would love to pursue.  Do gentlemen have any---- Wait a minute then. Did you ask for discovery when the motion for judgment on the pleadings was made? Well, it was a 12 v. 6 motion to dismiss, You Honor? Yes. Not a dispositive motion, and I have to say I'd be happy to go back and look at the record myself. I don't have that specific reference in front of me. Well, your brief is in the record, your opposition. Yes. And I just looked through it. I didn't see any place in here, but it's 18 pages. Certainly, Your Honor, and I ---- that may very well be true, but again, you didn't set it out as a separate issue in any event. Yes. We did not, and I don't have a recollection of specifically requesting the opportunity for discovery, but given the manner in which the Court decided the issues, I think that would have been a futile request, and I think the record will ---- Well, at any rate, your blue brief doesn't raise it as an issue before us. And I don't think that I think it goes back based upon the judge's findings that this is one of those rare, one of those unusual cases where the facts judicially noticed and the facts alleged compel a decision that we could never succeed on the merits. And you talk about discovery. We also talk about the ability to do independent investigation that would sort the ---- Yes. It's hard for you to come in here and tell us that the magistrate would not have acceded to a request for additional discovery or wouldn't have addressed it, but he didn't even get an opportunity to address it because you never raised it. That's very difficult for you to come in here and say, well, Judge Spiro would never have done that if you didn't even raise it to him. But his language is, as a matter of law, there was no deception. Right. But that's based on the facts that are there before you. If you said, well, Your Honor, there are other things here that we would like to discover that have a bearing on this. But you didn't make that argument to him, evidently. I did. I do not believe on the record that we needed additional discovery to be able to sustain the possibility of that cause of action. Okay. So then you took your chances with what evidence was in the record, didn't argue that there was additional discovery required. And that evidence is sufficient. And the standard under the Consumer Protection Act is not a high standard. It is a liberal standard designed to benefit consumers. And the fact, the strongest fact, that he signed the card, the Consumer Protection Act, does not, does not recognize that the signature on a document, which the facts support the plausible allegation, is designed not to be read, understood or discovered. Has Mr. Harmon alleged at any point that he couldn't read the notice? He said that it was he did not make that legal conclusion, Your Honor. He said that the facts show that it is in font so small that it is unreasonable for the reason, for the, for a person to have disclosed that. Okay. To have had that disclosed to him. All right. Thank you. We thank both counsel for the argument. The case is submitted.
judges: Gettleman, Wallace, Bybee